**STATE of Missouri, Respondent,**

v.

**John W. McNEAL, Appellant.**

**Nos. WD 50320, WD 52344.**

Missouri Court of Appeals,
Western District.

Submitted Jan. 9, 1997.

Decided March 11, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 29, 1997.

Application to Transfer Denied
June 17, 1997.

---

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

John W. McNeal appeals his conviction, after jury trial, for two counts of murder in the first degree, § 565.020, RSMo 1994 [1], one count of murder in the second degree, § 561.021, and three counts of armed criminal action, § 571.015, for which he was sentenced to two terms of life imprisonment without probation or parole, two terms of life imprisonment, and two terms of thirty years imprisonment. McNeal also appeals the denial of his Rule 29.15 motion for post-conviction relief, following an evidentiary hearing. In his direct appeal, McNeal contends that the trial court erred in denying his motion for judgment of acquittal on Counts I and V, murder in the first degree, and Counts II and VI, armed criminal action, because the state failed to prove that McNeal deliberated before he shot Gaylon King and Kimberly Partee. McNeal, in his appeal from the denial of his Rule 29.15 motion, claims that the motion court erred in denying his Rule 29.15 motion because trial counsel failed to preserve for appellate review the claim that one of the jurors was intimidated into finding McNeal guilty of first degree murder. The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

On May 5, 1993, McNeal invited an acquaintance, Pamela McMurray, to come to his house and meet his relatives from out of town. McNeal's cousins, Mark Purse and Gaylon King were visiting, together with Kimberly Partee, a friend. The party included drinking and smoking crack cocaine. An argument broke out between McNeal and his cousins over an attorney's bill that McNeal had promised to pay. The cousins began teasing McNeal, calling him "crazy." McNeal retorted, "I'm going to show them how crazy I am," and proceeded downstairs to the basement of the house.

When McNeal returned from the basement, he had a shotgun with him. He approached his cousin who was in the kitchen and shot him. The cousin said, "Yeah man, you shot me." McNeal responded, "Yeah, I know," and shot him again. McNeal next shot Kimberly Partee and then walked into another room and shot his other cousin. McMurray, who was hiding under the kitchen table, saw that McNeal was out of shells. When McNeal left the kitchen again, this time to retrieve more shells to reload his gun, McMurray attempted to find a way out of the house. She found that the doors were locked, and that the windows were barred, except for the window over the kitchen sink. McMurray climbed over the sink and went out of the window, also encouraging Partee to get out. Partee would not follow her.

1. All statutory references are to Revised Statutes of Missouri 1994, unless otherwise indicated.

McMurray heard Partee plead for her life, saying, "Oh God, don't shoot me no more, don't shoot me, I've already been shot, don't shoot me." McMurray then heard one more gunshot. She ran to the neighbors across the street.

Kimberly Partee, Mark Purse and Gaylon King all died from the wounds inflicted by McNeal. McNeal was charged with three counts of first degree murder and three counts of armed criminal action. McNeal requested, and the trial court ordered, a mental examination. The examiner determined that McNeal was competent to stand trial. McNeal's defense was that he did not have the mental ability to deliberate before shooting because of damage to his brain. Both the prosecution and the defense called expert witnesses to give opinions on the subject of McNeal's possible brain impairment. The jury found McNeal guilty of murder in the first degree and armed criminal action in the deaths of Kimberly Partee and Gaylon King and of murder in the second degree and armed criminal action in the death of Mark Purse.

McNeal filed a *pro se* Rule 29.15 motion for post-conviction relief. Appointed counsel thereafter filed an amended motion. An evidentiary hearing was held on November 30, 1995. On January 11, 1996 the trial court issued findings of fact and conclusions of law denying McNeal's Rule 29.15 motion. McNeal appeals his conviction and the denial of his Rule 29.15 motion.

### DIRECT APPEAL

McNeal contends that the trial court erred in denying his motion for judgment of acquittal on Counts I and V, murder in the first degree, and Counts II and VI, armed criminal action, because the state failed to prove him guilty beyond a reasonable doubt on those charges in that it did not establish that McNeal deliberated before he shot Gaylon King and Kimberly Partee. McNeal bases his assertion on the testimony of two witnesses called by the defense, Dr. Dennis Cowan, a licensed clinical neuropsychologist, and Dr. Dorsey Dysart, a neurologist and psychiatrist. Dr. Cowan testified that McNeal was unable to coolly reflect upon his actions because of the type and degree of brain impairment that McNeal suffered. Dr. Dysart testified that he did not believe that McNeal could have deliberated at the time of the shootings.

When reviewing a challenge to the sufficiency of the evidence, the court must determine whether sufficient evidence exists to have found a defendant guilty beyond a reasonable doubt. *State v. Copeland,* 928 S.W.2d 828, 847 (Mo. banc 1996). The evidence is examined in the light most favorable to the verdict of the fact finder. *Id.* We accept as true all of the evidence that is favorable to the State, including all favorable inferences drawn therefrom. *State v. O'Brien,* 857 S.W.2d 212, 215–16 (Mo. banc 1993). All contrary evidence and inferences are disregarded. *Id.* at 216. The jury was not required to believe the testimony of the defense witnesses. The State's expert witness, Dr. Richard Gowdy, a clinical psychologist and licensed forensic psychologist, found no evidence that McNeal had any impairment that would prevent him from being able to deliberate. Even without the state's expert testimony, there was evidence of deliberation.

■ Section 565.002(3) defines "deliberation" as "cool reflection for any length of time no matter how brief." The element of deliberation is most often proven by indirect evidence and inferences that are drawn from the circumstances surrounding the crime. *State v. Craig,* 642 S.W.2d 98, 101 (Mo. banc 1982). In this case, McNeal made the statement that he would "show them how crazy" he was. He then went downstairs into his basement and returned with a shotgun. After he shot his first victim, his cousin, he was told, "Yeah man, you shot me." McNeal responded to this by telling his cousin, "Yeah, I know." He then shot him again. McNeal shot Kimberly Partee and then walked into another room and shot his other cousin. McNeal had time to reload his shotgun before he returned to dispatch Partee. Partee pleaded for her life before McNeal shot her again. All of these actions support a finding of deliberation. *See State v. Clark,* 913 S.W.2d 399, 404 (Mo.App.1996). Point I is denied.

## POST–CONVICTION PROCEEDINGS

McNeal, in his appeal from the denial of his Rule 29.15 motion, contends that the motion court erred in denying his Rule 29.15 motion because trial counsel failed to preserve for appellate review the claim that one of the jurors was intimidated into finding McNeal guilty of first degree murder. The juror, Linda Maxey, contacted defense counsel and told him that she had some concerns about the verdict. At the post-conviction hearing, Maxey testified that the other jurors had been hostile and ignored her concerns over some aspect of the testimony given by the state's psychologist. She testified that she felt pressured into a guilty verdict. Defense counsel filed a motion for new trial listing the alleged coercion of Maxey as one of the grounds for new trial. Although available, Maxey was never contacted to testify at the sentencing hearing or the new trial hearing. In its findings of fact and conclusions of law, the trial court rejected McNeal's allegation of error, stating:

> In claim 1(b) of his amended motion, Movant alleges he received ineffective assistance of counsel when trial counsel James Speck failed to adequately preserve for appellate review the claim stated in the motion for new trial that juror number 12, Linda Maxey, had been coerced into finding Movant guilty against her will. Ms. Maxey contacted trial counsel and informed him that the other jurors had intimidated her into voting guilty of first degree murder on counts I and V, although such a vote was against her conscience. Ms. Maxey told counsel the other jurors had ridiculed her and refused to discuss the points he [sic] tried to raise, contrary to the instructions of the trial court. Ms. Maxey testified at the evidentiary hearing the other jurors refused to discuss or consider Movant's defense evidence that his organic brain damage made him incapable of deliberation, and that she felt coerced by the other jurors into finding Movant guilty of first degree murder on counts I and V.

> As a matter of law, juror misconduct is outside the scope of Post Conviction Relief Evidentiary Hearing (*State v. Huggans,* 868 S.W.2d 523 (Mo.App.1993); *Pickett [v.*

*State],* 826 [690] S.W.2d 690 [826] (Mo.App. 1985)). Moreover, Ms. Maxey's testimony did not constitute misconduct by the other 11 members of the jury or by herself.

Review of the motion court's findings and conclusions is limited to a determination of whether they are clearly erroneous. *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995). The motion court's findings and conclusions will be found clearly erroneous when, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake was made. *State v. Nunley,* 923 S.W.2d 911, 922 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997).

In establishing ineffective assistance of counsel, a movant must satisfy a two part test, showing: (1) that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) that the defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Prejudice is found when it is shown by a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different. *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). Movant must demonstrate that the fact finder would have had a reasonable doubt as to guilt absent the alleged error. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). This court need not determine the performance component of the test before examining for prejudice. *Nunley,* 923 S.W.2d at 923. A claim may be disposed of on the grounds that there is not sufficient prejudice shown, if it is easier to do so. *Id.*

There is a presumption that counsel performed effectively; the movant assumes a heavy burden in attempting to overcome this strong presumption by a preponderance of the evidence. *Tokar,* 918 S.W.2d at 761. The benchmark for judging ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In the instant case, any effort to impeach the verdict would have been to no avail. A juror may not impeach the verdict as to misconduct inside or outside the jury room whether before or after the jury is discharged. *Wingate by Carlisle v. Lester E. Cox Medical Center,* 853 S.W.2d 912, 916 (Mo. banc 1993). If counsel chose to abandon the contention that juror Maxey felt coerced and intimidated into voting against her conscience, counsel's strategy cannot be found ineffective. The proper time for juror Maxey to speak up was at the time of deliberations. There are sound reasons for not entertaining second thoughts later. Our review of her testimony presented at the post-conviction hearing shows that there was no legal basis for granting a new trial. We hold that the trial court's findings and conclusions were not clearly erroneous. Point II is denied.

The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

BRECKENRIDGE and EDWIN H. SMITH, JJ., concur.

